# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM BLACKWELL,** | : | **Civil No. 1:12-CV-825** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MIDDLETOWN POLICE** | : | |
| **DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

In this action, the plaintiff, William Blackwell, has sued three law enforcement officers employed by the Middletown Police Department who were involved in an investigation and eventual prosecution of the plaintiff for drug trafficking crimes that were ultimately dismissed in 2011. As discussed below, the plaintiff has sued these officers for constitutional and state-law violations arising out of the allegedly unlawful search of his property, and his eventual arrest and prosecution for drug trafficking crimes – charges that dismissed after the Court of Common Pleas found that the warrant that permitted the search of the plaintiff's property issued without probable cause.

Now pending before the court is a motion to dismiss the plaintiff's second amended complaint, filed by Police Officer Andrew Crone, Police Officer Peter Fure, and Sergeant Richard Hiester. (Doc. 31.) The motion is fully briefed and ripe for

disposition. For the reasons that follow, we will recommend that the motion be granted in part and denied in part.

## II. **BACKGROUND**

The plaintiff, William Blackwell, is an inmate in the custody of the Pennsylvania Department of Corrections, currently housed at the State Correctional Institution at Somerset. Blackwell commenced this action on May 3, 2012, by filing an initial complaint against the Middletown Borough Police Department, Police Officers Andrew Crone and Peter Fure, Police Sergeant Richard Hiester, and Magisterial District Judge David A. Judy. On May 30, 2012, we issued a report in which we recommended that the district court dismiss Judge Judy from suit, as he was entitled to judicial immunity. (Doc. 5.)

On June 15, 2012, the plaintiff filed an amended complaint against all defendants, except Judge Judy. (Doc. 8.) Comparison of the amended complaint and the original complaint revealed that they were almost entirely identical. As a result, the district court concluded that the plaintiff had not identified the deficiencies that were outlined in our report and recommendation, and, therefore, ordered the amended complaint stricken from the record. The plaintiff was granted leave to file a second amended complaint within 20 days in order to address the substantive deficiencies that we had noted in our report and recommendation. (Doc. 9.)

The plaintiff did filed a second amended complaint on November 12, 2012, in which he set forth allegations against defendant Crone, Fure, and Hiester that were substantially identical to those alleged in the plaintiff's initial complaint and first amended complaint. (Doc. 21.)

In this pleading, Blackwell claims on that on July 13, 2010, Police Officer Andrew Crone of the Middletown Bureau Police Department applied for a search warrant for the residence of 15 North Pine Street in Middletown Borough, Pennsylvania, where the plaintiff was allegedly a resident. (Doc. 21, at 1.) Blackwell alleges that the warrant sought by Officer Crone was the product of both a mistake, and a violation of the Fourth Amendment which arose during a three-week narcotics investigation of a different, unknown residence located elsewhere on North Pine Street in Middletown Borough. (Id.)

The plaintiff claims that in connection with this drug investigation, Police Officer Andrew Crone had Police Officer Peter Fure do a trash "pull" of the residence that was "allegedly under investigation." However, according to the plaintiff, Officer Fure pulled the trash at the wrong residence, and instead pulled the plaintiff's trash at 15 North Pine Street. (Id. at 2.) The plaintiff seems to allege that in order to seize the trash, Officer Fure unlawfully came onto the curtilage of his property and seized the garbage without a warrant or probable cause to do so. This trash was later searched

and allegedly revealed one stem of marijuana, several clear baggies commonly used to package marijuana, one clear "mini-zip", and "mail matter" addressed to a Vivian Harbart at North Pine Street.  (Id.)

According to the plaintiff, on the basis of the contraband discovered from the trash pull, Officer Crone applied for a search warrant for 15 North Pine Street, even though he knew that the trash pulled from the plaintiff's residence was the "wrong" trash, in that police had intruded onto the wrong property to conduct this trash pull, and that, therefore, according to the plaintiff, there was "no probable cause". Moreover, the plaintiff alleges that the affidavit of probable cause submitted in support of the search warrant lacked key facts necessary to support a finding of probable cause, including details such as time, reliability of an informant, information, and location.  (Id.)  Most importantly, the plaintiff alleges that Officer Crone omitted from his affidavit the fact that Officer Fure actually went onto the property at 15 North Pine Street, without a warrant or probable cause, and seized the trash that was used as the basis for the warrant application.

The plaintiff alleges that on July 13, 2010, Magisterial District Judge David Judy approved Officer Crone's application for a search warrant, despite knowing that it did not contain key facts to support a finding of probable cause.  In particular, the plaintiff claims that the affidavit of probable cause did not indicate where the trash

pull had been conducted, did not specify when Sergeant Hiester allegedly informed Officer Crone about marijuana usage at the residence, did not reveal when Sergeant Hiester first learned that information, and failed adequately to show that marijuana was likely being used at the residence at 15 North Pine Street at the time the warrant was issued. (Id.) Additionally, the plaintiff alleges that the magistrate was aware that trash that the officers had searched had been pulled from within the property at the wrong residence. (Id.) Despite what he contends were glaring deficiencies in the warrant application, the plaintiff avers that the magistrate nevertheless issued the search warrant "with callous and reckless disregard to plaintiff's rights." (Id. at 3.)

On July 13, 2010, police officers searched the residence at 15 North Pine Street, pursuant to the warrant that was issued. That search yielded narcotics, a large quantity of cash, and a firearm. According to plaintiff, as the result of this search, he was arrested and forced to spend three days incarcerated in the Dauphin County Prison in what he describes were "unsanitary and inhuman conditions". (Id.)

According to the second amended complaint, on June 1, 2011, the plaintiff filed a motion to suppress the evidence that was seized during the search of 15 North Pine Street, and the motion was granted by the Dauphin County Court of Common Pleas. Thereafter, on July 25, 2011, the charges that were filed against the plaintiff relating to the search and seizure were dismissed. (Id.)

In the second amended complaint, plaintiff brings five counts against each of the three remaining defendants, Police Officers Crone and Fure, and Sergeant Hiester. In Count I, the plaintiff alleges that the defendants violated his rights under the Fourth Amendment to the United States Constitution by subjecting him to an unlawful search and seizure. In Count II, the plaintiff alleges violations of the Eighth Amendment for cruel and unusual punishment. In Count III, the plaintiff alleges a Fourteenth Amendment violation of his right to due process. In Count IV the plaintiff brings a claim for an "intentional tort" based upon "willful misconduct". Finally, in Count V, the plaintiff alleges a general claim for negligence relating to the officers' conduct.

The defendant have collectively moved to dismiss the second amended complaint, arguing that they are entitled to qualified immunity, that the complaint fails to state a claim upon which relief may be granted, and that plaintiff's tort claims either fail on the pleadings, or are otherwise barred pursuant to the Political Subdivision Tort Claims Act.

## III.   **STANDARD OF REVIEW**

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell</u>

6

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative

level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

## IV.    <u>DISCUSSION</u>

### A.    **Plaintiff's Claim for Fourth Amendment Violations**

In Count I, the plaintiff first alleges that the three remaining defendants violated his rights under the Fourth Amendment to the United States Constitution by conducting a search of the residence at 15 North Pine Street based upon mistaken information, and without probable cause. As a threshold matter, the defendants maintain that they are entitled to qualified immunity from this claim.

In this case, we find that the procedural context of this litigation defines the substantive outcome of this motion. At this stage of the litigation, where our decision is cabined and defined by the well-pleaded facts in the complaint, we cannot ultimately resolve all aspects fo this qualified immunity claim. Instead, upon consideration, we find that whether Officers Fure and Crone are entitled to qualified immunity cannot be conclusively determined at this time, because there are unresolved

questions of fact regarding precisely what these officers are claimed to have done in connection either with the search of the trash pulled from 15 North Pine Street, or in subsequently failing to disclose material facts relevant to the magistrate judge's assessment of whether there was probable cause to issue a warrant to search the property. Although these defendants may ultimately be entitled to qualified immunity from these claims, we believe that such a determination must await further discovery. In contrast, however, we agree that Sergeant Hiester is entitled to qualified immunity from the plaintiff's claims that this defendant violated the plaintiff's rights under the Fourth Amendment.

## 1. Qualified Immunity

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). "[P]articularly in § 1983 cases involving alleged violations of the Fourth Amendment, the Supreme Court has emphasized that the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and

the information in the officer's possession." <u>Sharrar v. Felsing</u>, 128 F.3d 810, 826 (3d Cir. 1997).

Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Messerschmidt v. Millender</u>, – U.S. – , 132 S. Ct. 1235, 1244 (2012) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. – , –, 131 S. Ct. 2074, 2085 (2011)) (further citation omitted). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." <u>Anderson v. Creighton</u>, 483 U.S. 635, 639 (1987).

In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.

Ct. 808, 818 (2009).

"The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

Notably, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" Messerschmidt v. Millender, – U.S. –, 132 S. Ct. 1235, 1245 (2012) (quoting United States v. Leon, 468 U.S. 897, 922-23 (1984)). The Supreme Court has recently observed that "[a]lthough Leon involves the proper application of the exclusionary rule to remedy a Fourth Amendment violation, we have held that 'the same standard of objective reasonableness that we applied in the context of a suppression hearing in Leon defines

the qualified immunity accorded to an officer' who obtained or relied on an allegedly invalid warrant." Id. at n. 1 (quoting Malley v. Briggs, 475 U.S. 335, 344 (1986)).

However, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure is not entirely dispositive of the inquiry into objective reasonableness. Id. at 1245. Instead, there is an exception to qualified immunity when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." Malley, 475 U.S. at 341. As the Supreme Court in Malley further explained:

> We also reject petitioner's argument that if an officer is entitled to only qualified immunity in cases like this, he is nevertheless shielded from damages liability because the act of applying for a warrant is *per se* objectively reasonable, provided that the officer believes that the facts alleged in his affidavit are true. Petitioner insists that he is entitled to rely on the judgment of a judicial officer in finding that probable cause exists and hence issuing the warrant. This view of objective reasonableness is at odds with our development of that concept in Harlow and Leon. In Leon, we stated that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." 468 U.S. at 922, n. 23, 104 S. Ct., at 3420, n. 23. The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail

13

to perform as a magistrate should. ***We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment***.

<u>Malley</u>, 475 U.S. at 345-46 (emphasis added).

At the same time, "the threshold for establishing this exception is a high one, and it should be." <u>Messerschmidt</u>, 132 S. Ct. at 1245. This is because the Supreme Court has instructed that "it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." <u>Leon</u>, 468 U.S. at 921; <u>see also</u> <u>Malley</u>, 475 U.S. at 346 n.9 ("It is a sound presumption that the magistrate is more qualified that the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.") (internal quotation marks and citation omitted)).

The Third Circuit Court of Appeals has explained that "[w]here a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997). Once the plaintiff does so, a defendant will bear the burden of demonstrating that no genuine dispute of fact remains with respect to the objective

reasonableness of the defendant's believe in the lawfulness of his actions.  Id.

A plaintiff bringing a lawsuit under 42 U.S.C. § 1983 challenging the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy a two-part test developed by the United States Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978). This test requires a plaintiff to show, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant, and (2) that such statements or omissions are material or necessary, to the finding of probable cause.  Sherwood, 113 F.3d at 399.  "Under Franks, falsehoods are deemed material to the finding of probable cause if the affidavit, 'with the . . . false material set to one side . . . is insufficient to establish probable cause."  Id. (quoting Franks, 438 U.S. at 156).

The Third Circuit has instructed that "[w]hen confronted with an affirmative misrepresentation in an affidavit submitted to procure a search warrant, a court must excise the false statement from the affidavit," and then a § 1983 plaintiff must prove by a preponderance of the evidence that probable cause would not exist under the corrected affidavit, meaning that the plaintiff must prove the false statements were material to the original probable cause finding.  Id.

## 2. Application of the Doctrine of Qualified Immunity to the Plaintiff's Fourth Amendment Claims

Turning to the Fourth Amendment claims in the instant case, it appears that the plaintiff is alleging that Officer Crone violated his Fourth Amendment rights by preparing an affidavit of probable cause that was plainly insufficient to support the magistrate's ultimate finding of probable cause to issue the warrant, because the affidavit lacked sufficient detail regarding the time, location, and nature of what Sergeant Hiester told Officer Crone about the suspected use of marijuana at the residence. Moreover, and we believe more importantly, the plaintiff alleges that Officer Crone's affidavit contained material omissions – namely, the location from which Officer Fure actually seized the trash that was pulled, searched, and which ultimately served as the predicate for the search warrant application. Indeed, it was this allegedly material omission (i.e., that Officer Fure unlawfully seized the trash from within the property itself, without a warrant) which ultimately caused Judge Dowling of the Dauphin County Court of Common Pleas to find that the warrant application was plainly inadequate to support a finding of probable cause, and accordingly to suppress the evidence seized as a result of the search warrant that Judge Judy had issued. (Doc. 21, Ex. 2.)

Notwithstanding his apparently limited involvement in the procurement of the

warrant that ultimately issued, however, the plaintiff contends that Officer Fure violated the plaintiff's Fourth Amendment rights by seizing trash from 15 North Pine Street that was not within the curtilage of the property, without a warrant and without probable cause, and thus in violation of the Fourth Amendment. According to the plaintiff, this unlawfully seized evidence was taken to the police station where Officer Crone searched it, and it was later used in Officer Crone's affidavit as the basis for an application for a warrant to search the plaintiff's residence.

Upon consideration, we do not believe that Officer Fure is entitled to qualified immunity at this time from the plaintiff's claim that he unlawfully entered the property at 15 North Pine Street and thereafter pulled trash from within this property, which was later searched, and relied upon in a search warrant application that did not reveal that the trash had been seized within the property without a warrant. In this regard, Blackwell's claims against Officer Fure are essentially that the officer conducted a warrantless search within the curtilage of the plaintiff's property. Such claims are not routinely subject to dismissal on the pleadings. As one district recently observed, "[t]he Third Circuit and its district courts have been wary of finding qualified immunity as a matter of law with respect to warrantless searches." Snyder v. Daugherty, 899 F. Supp. 2d 391, 405 (W.D. Pa. 2012.)

The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The warrant requirement guarantees the right of freedom from unwarranted governmental intrusion.  <u>Payton v. New York</u>, 445 U.S. 573, 585-86 (1980).  A basic principle of Fourth Amendment jurisprudence, and one that is well established, is that warrantless searches and seizures from a home are presumptively unreasonable.  <u>Id.</u> at 586.

In the context of claims for qualified immunity, in recognition of the important interests protected by Fourth Amendment, the Third Circuit has been cautious about defining too narrowly rights that are implicated, "beyond 'the basic rule, well established by Supreme Court cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional.'" <u>Harvey v. Plains Twp. Police Dep't</u>, 421 F.3d 185, 194 (3d Cir. 2005) (quoting <u>Groh v. Ramirez</u>, 540 U.S. 551, 564 (2004)).  Moreover, courts within this circuit are cautious about permitting, without a complete factual record, claims of qualified immunity to Fourth Amendment claims where such claims rely upon the plaintiff's consent, <u>see</u> <u>Reppert v. Kummerer</u>, No. 05-CV-01404, 2006 WL 2590504 (E.D. Pa. Sept. 6, 2006), <u>aff'd in part sub nom.</u> <u>Roppert</u>

v. Marino, 259 F. App'x 481 (3d Cir. 2007), and when claims of qualified immunity turn on whether the police officer had sufficient information to ensure that he was permitted to enter the premises, see Gale v. Storti, 608 F. Supp. 2d 629, 634 (E.D. Pa. 2009).

It is true that the Supreme Court has held that the Fourth Amendment does not prohibit the warrantless seizure and search of garbage left for collection on a curb outside the curtilage of a home. See California v. Greenwood, 486 U.S. 35, 39 (1988) ("The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondents manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable."); see also O'Connor v. Ortega, 480 U.S. 709, 715 (1987); Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); United States v. Reicherter, 647 F.2d 397, 399 (3d Cir. 1981) ("Having placed the trash in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, it is inconceivable that the defendant intended to retain a privacy interest in the discarded objects. If he had such an expectation, it was not reasonable."). The rule regarding the seizure of garbage placed on the curb for disposal, however, "require[s] the government to show that the garbage it inspected was readily accessible to the public." United States v.

Deaner, 1 F.3d 192, 196 (3d Cir. 1993) (citing United States v. Hedrick, 922 F.2d 396, 398 (7th Cir. 1991)). Thus, the location where police seize garbage without a warrant is directly relevant to an evaluation of whether that seizure was lawful under the Fourth Amendment.

In this case, the plaintiff claims that Officer Fure violated the Fourth Amendment by entering the premises at 15 North Pine Street, and thereafter unlawfully seizing one or more trash bags on the property without a warrant. Precisely where Officer Fure seized the trash from this residential property is unclear from the second amended complaint, and is entirely unaddressed in Officer Crone's search warrant application, as it represented only that Officer Fure pulled trash from this residence by mistake. Upon consideration, we find that the factual uncertainty regarding this seizure militates against a finding that Officer Fure is entitled to qualified immunity at this juncture. Instead, we find that the question of Officer Fure's entitlement to qualified immunity must await further discovery regarding the facts surrounding the trash pull that ultimately formed a substantial basis for the warrant that was issued.

With respect to Officer Crone, the plaintiff claims that this officer unlawfully procured the warrant that led to the search of the residence at 15 North Pine Street, during which officers discovered marijuana, a firearm, cash and other indicia of drug

trafficking that led to criminal charges being filed against Blackwell.  The plaintiff alleges that given his considerable experience as a law enforcement officer and drug task force member, Officer Crone was aware that his affidavit was substantially lacking in probable cause, particularly because he knew that Officer Fure had unlawfully pulled the trash off of the property at 15 North Pine Street, without a warrant or probable cause to do so, and yet Officer Crone omitted this material information in his application for the search warrant.  In addition, the plaintiff claims that Officer Crone conspired with Sergeant Hiester to fabricate the asserted fact that Sergeant Hiester was aware of marijuana use at 15 North Pine Street, which fabrication was then incorporated as fact into Officer Crone's warrant application.

As noted above, we believe that questions regarding whether Officer Crone is entitled to qualified immunity from the plaintiff's Fourth Amendment claims must await further discovery regarding, *inter alia*, the facts surrounding Officer Fure's trash pull, what Officer Crone knew about the trash pull at 15 North Pine Street, and whether he knew and intentionally omitted the fact that the trash was seized from within the property without a warrant.  Although we believe the question of whether Officer Crone is entitled to qualified immunity is a close one, we ultimately conclude that it is dependent upon facts that thus far have not been established in this action.

In marked contrast, the plaintiff's claims against Sergeant Hiester appear to be

limited to an allegation that he "passed on information to [Officer Crone] in reference to [15 North Pine Street] about the use of marijuana." (Doc. 21.)  The plaintiff suggests, with no factual support of any kind, that Sergeant Hiester fabricated this information, and did so in conspiracy with Officer Crone.  There are insufficient facts to suggest that Sergeant Hiester had anything to do with the preparation of the warrant application, or that the information he allegedly provided to Officer Crone was false or misleading.  The plaintiff pleads no facts in support of this extraordinary charge, and instead his claim rests on bare, conclusory assertions that we find plainly fail the Twombly and Iqbal standards for pleadings, discussed supra, and we conclude that nothing in the second amended complaint reasonably suggests that this officer violated a well settled right of which a reasonable officer would have been aware. Accordingly, we will recommend that the plaintiff's Fourth Amendment claims against Sergeant Hiester be dismissed.

### B.     The Plaintiff Fails to Plead an Eighth Amendment Violation

In Count II, the plaintiff has sued the defendants for alleged violations of his Eighth Amendment right to be free from cruel and unusual punishment, apparently by causing criminal charges to be filed against the plaintiff, after which he was arrested and forced to spend three days in a county prison.  The plaintiff alleges generally that upon his arrival at the detention facility he was subjected to strip search, and was

housed in conditions that he generally alleges were "unsanitary and inhumane". (Doc. 21.) The plaintiff's second amended complaint does not set forth any allegations to support his generic assertion that he was subjected to cruel and unusual punishment.

As a technical legal matter the plaintiff, who was a pretrial detainee in 2011, does not have a claim cognizable under the Eighth Amendment for cruel and unusual punishment. See Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause.") (citing Bell v. Wolfish, 441 U.S. 520 (1979).

Furthermore, the fact that the plaintiff was subjected to a strip search upon being placed into pretrial detention does not state a claim for a violation of the plaintiff's Fourth Amendment rights as a pretrial detainee, as the Supreme Court has recently made clear. Florence v. Bd. of Chosen Freeholders of County of Burlington, – U.S. – , 132 S. Ct. 1510 (2012). In addition, the remainder of the plaintiff's claims that his relatively brief time in pretrial detention amounted to something akin to cruel and unusual punishment, or otherwise failed to satisfy constitutional safeguards, are simply inadequately pled. The plaintiff offers no allegations to support his broad claims of constitutional violations, other than to aver that he found the conditions unsanitary and "inhumane", or to observe that he was forced to consume food in some proximity to a toilet, or that he was being housed in proximity to numerous other

detainees. We find the general, and especially limited, nature of these allegations does not warrant further examination or analysis, as they are plainly insufficient to state a claim based upon the conditions of the plaintiff's confinement. Furthermore, there are no allegations at all in the complaint that the named defendants had anything to do with the conditions of the plaintiff's confinement in a local prison, as these officers are alleged only to have investigated the plaintiff for suspected criminal activity, and to have brought criminal charges against him after discovering him to be in possession of a firearm, narcotics, and other indicia of drug trafficking. The plaintiff's claims regarding the conditions of his confinement set forth in Count II plainly fail and should be dismissed.

### C. The Plaintiff's Due Process Claim Fails on the Pleadings

In Count III, the plaintiff alleges that each of the named defendants violated his rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. The plaintiff does not explain in any fashion how these defendants violated his right to due process, much less whether he is bringing a claim for a substantive due process violation or whether the claim is one for a violation of due process in connection with his criminal proceedings – proceedings that appear to have ended in the plaintiff's favor following the dismissal of the charges brought against him.

Upon consideration, it appears that the plaintiff's asserted Fourteenth Amendment claim is really one for substantive due process, and is essentially duplicative of the plaintiff's claims regarding the allegedly unlawful search and seizure of his property, and his claims regarding being subjected to pretrial detention in a facility he found violated minimum constitutional guarantees.

In general, substantive due process claims are disfavored where the conduct at issue is addressed in another specific constitutional provision. See Graham v. Connor, 490 U.S. 386 (1989). Indeed, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994). These cases thus instruct that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

In this case, the plaintiff has set forth a relatively clear cause of action for a violation of the Fourth Amendment protection against illegal search and seizure, and he has pleaded an entirely inadequate claim invoking the Eighth Amendment that we submit should be dismissed. We have found that the plaintiff's Fourth Amendment claim should be permitted to go forward with two of the three remaining defendants, and thus recommend that the court permit this action to proceed on that claim, rather than to entertain a parallel, far less precise, claim for unspecified "due process" violations that would appear to be largely redundant of the plaintiff's Fourth Amendment claim. We will accordingly recommend that the Count III be dismissed.

### D. Plaintiff's Negligence Claims Against the Officers are Barred By the Pennsylvania Political Subdivision Tort Claims Act

In Count V of the second amended complaint, the plaintiff alleges a claim against each of the named defendants for negligence under Pennsylvania law for their alleged conduct with respect to the search of his property, procurement of the warrant, and his eventual criminal charges and arrest. This claim, however, is expressly foreclosed by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. §§ 8541 et seq., and should be dismissed.

Subject to certain specific exceptions, the Political Subdivision Tort Claims Act ("PSTCA") provides in relevant part that "no local agency shall be liable for any

damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. § 8541. An employee of a local agency is liable for civil damages on account of injuries to persons or property caused by acts of the employee within the scope of his employment, only to the same extent as his employing local agency. 42 Pa. Cons. Stat. Ann. § 8545. Accordingly, in order to maintain a negligence claim for damages against an officer or employee of a local agency covered by the Act, a plaintiff must demonstrate that a recognized exception to the Act's broad grant of immunity applies.

The Act permits negligence suits against local agencies and their agents in the following eight narrow categories: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks, and (8) care, custody or control of animals. Pa. Cons. Stat. Ann. § 8542(a). Although an employee's willful misconduct may vitiate the immunity provided under the Act, 42 Pa. Cons. Stat. Ann. § 8550, acts of lesser culpability, such as mere negligence as alleged in Count IV of the second amended complaint, will not cause the employee to forfeit immunity from a damages suit. See, e.g., Dull v. West Manchester Twp. Police Dep't, 2008 WL 717836, at *9 (M.D. Pa. 2008); Boria v. Bowers, No. Civ. A. 06-4383, 2007 WL 2726338, at *6 (E.D. Pa. Sept. 17, 2007) ("Mere negligence or deliberate indifference is not sufficient

to break through governmental immunity on the grounds of willful misconduct."); see also Bright v. Westmoreland County, 443 F.3d 276 (3d Cir. 2006) (applying the PSTCA to law enforcement officials whose conduct could not be deemed to be "willful misconduct").

In this case, the PSTCA plainly applies to the plaintiff's claim against each of the law enforcement officers for negligence, and none of the eight exceptions set forth in 42 Pa. Cons. Stat. Ann. § 8542 has any application to the allegedly negligent conduct at issue in this case. Instead, the plaintiff generally claims that each of the officers was negligent in some fashion in searching his property, or in preparing an application for a search warrant, or in supplying information to the officer applying for the search warrant. None of this activity is actionable in a negligence suit in Pennsylvania, as the defendants are immune under the Act. See, e.g., Cooper v. City of Chester, 810 F. Sup. 618, 625 (E.D. Pa. 1992) (finding claim for negligence in connection with allegations for false arrest barred by the PSTCA). Accordingly, Count III should be dismissed as to all parties.

### E.    Plaintiff's Intentional Tort Claim

In addition to his negligence claim, the plaintiff has also alleged, in very general fashion, that the defendants engaged in willful misconduct in connection with their investigation into his alleged criminal activity, and, therefore, are liable for

28

unspecified intentional torts under Pennsylvania law.  Upon consideration, we find that the plaintiff has not adequately alleged that the defendants engaged in intentionally tortious conduct, and thus we will recommend that this state-law claim also be dismissed.

At the outset, we again note that the PSTCA does not provide for immunity to law enforcement officials who engage in willful misconduct.  See 42 Pa. Cons. Stat. Ann. § 8550 (permitting action against governmental employees who are determined to have "cause the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct" and providing that the limitations on liability and provisions for indemnity provided for under the PSTCA shall not apply in such cases).

Under Pennsylvania law, willful misconduct is construed as "conduct whereby the actor desired to bring about the result that followed or at least was as aware that it was substantially certain to follow, so that such desire can be implied."  Vega v. Columbia Borough, Civ. A. No. 08-05932, 2009 WL 2143549, at *5 (E.D. Pa. July 15, 2009) (citing Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006)).  In other words, willful misconduct is synonymous with intentionally tortious conduct.  See Joseph M. v. N.E. Educ. Intermediate Unit 19, 516 F. Supp. 2d 424, 444 (M.D. Pa. 2007) (citing Delate v. Kolle, 667 A.2d 1218, 1221 (Pa. Commw. Ct. 1995).  Willful misconduct is thus "a step beyond 'wanton misconduct,' which 'means that the actor has

intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to the consequences.'" Id. (quoting Gaul v. Consol. Rail Corp., 556 A.2d 892, 898 (Pa. Super. Ct. 1989)).

Upon careful consideration, we conclude that the plaintiff has included insufficient allegations to show willful misconduct on the part of any of the three remaining defendants. Instead, we have found that he has made out a fairly close Fourth Amendment claim against two of the law enforcement officers, both of whom may potentially enjoy qualified immunity from the claims depending upon what is learned during discovery. Although we believe there are open questions with respect to the merits of the plaintiff's Fourth Amendment claims against Officers Fure and Crone relating to the search of 15 North Pine Street and the preparation of the application for the search warrant relating to that residence, we do not find sufficient facts in the complaint to show that any of the defendants engaged in conduct that was willful or deliberately indifferent to potential misconduct. We thus find that this state-law tort claims fails on the pleadings, and should be dismissed.

## V.    RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED THAT the defendants' motion to dismiss the second amended complaint (Doc. 31.) be GRANTED in part and DENIED in part as follows:

1.  The motion should be granted with respect to all claims set forth in Counts II - V, and these claims should be dismissed.

2.  With respect to the plaintiff's Fourth Amendment claims set forth in Count I, the motion should be granted as to Sergeant Hiester, but denied as to Officers Fure and Crone.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of

that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of June 2013.

/s/ **Martin C. Carlson**
Martin C. Carlson
United States Magistrate Judge